# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **Carlos De Sanctis,** | ) | |
| | ) | |
| Plaintiff, | ) | **No.** _____ |
| | ) | |
| **vs.** | ) | |
| | ) | **COMPLAINT** |
| **Alex Azar, Secretary of Health and Human Services,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff alleges:

1.      This is a civil action arising under the laws of the United States and is brought pursuant to the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C.A. §§ 12101 et seq.) which incorporates by reference the Civil Rights Act of 1964 codified at 42 U.S.C.A. §§ 2000e et seq. and Section 102 of the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a. This court has jurisdiction of the claims pursuant to 28 U.S.C.A. §§ 1331, 1343.

2.      This action is also brought pursuant to the Rehabilitation Act.

3.       Venue in the United States District Court for the District of New Mexico is proper under 28 U.S.C.A. § 1391(b) and 42 U.S.C.A. § 2000e-5(f)(3).

4.      Plaintiff is a resident of Albuquerque, New Mexico, which is in the federal District of New Mexico.

5.      Defendant Azar is the United States Secretary of Health and Human Services.

6.      Plaintiff was employed by Defendant at Gallup Indian Medical Center (GIMC) in Gallup, New Mexico. His supervisor was Dr. Gilberto Alvarez.

7.      Plaintiff is a qualified individual who was employed as Medical Officer in Pediatrics at GIMC. He was deemed qualified for the position and was hired at GIMC.

8.      Plaintiff was discriminated against on the bases of disability (mental) and subjected to harassment (non-sexual) and a hostile work environment.

9.      On October 17, 2017, Plaintiff was forced to resign from his position as Medical Officer Pediatrics. GIMC accepted Plaintiff's resignation with October 30, 2017, as the effective date.

10.      Dr. Gilberto Alvarez Colon Pediatric Supervisor acted as if he did not believe that Plaintiff was disabled despite the multiple letters from his medical providers stating his physical and mental diagnosis.

11.      Dr. Alvarez stated by text messages and emails that in the future he would not accept Plaintiff's sick leave requests if the diagnosis "did not convince him" and the Department of Health and Human Services (DHHS) that he was incapacitated to perform his work duties.

12.      No other employee at GIMC or DHHS was forced to work while sick.

13.      From September 2014 to September 2017, Plaintiff was subjected to hostile work environment.

14.      Plaintiff was denied accrued sick leave by Dr. Alvarez. Despite Plaintiff submitting Dr. Alvarez a medical excuse from his medical provider, he was forced to

work while sick from September 18, 2017 through September 21, 2017 and Dr. Alvarez

threaten to place Plaintiff on Absent Without Leave (AWOL).

15.     After the threat, Plaintiff submitted to Dr. Alvarez a second letter from his

Behavioral Health Provider recommending Plaintiff to be off from work for at least two

additional weeks due to his illness. Dr. Alvarez accepted the second letter, yet he

continued to harass Plaintiff the next day (September 22, 2017) via text and email stating

that those sick leave days were approved and were marked as "Conditional Leave".

16.     In addition, Dr. Alvarez requested Plaintiff bring him a full report from

each of his medical providers, stating his medical conditions, diagnosis, treatments,

medications that he was taking and prognosis and recommendations.

17.     Dr. Alvarez advised Plaintiff that if he did not provide these documents, he

would mark him AWOL.

18.     Dr. Alvarez did not wait for Plaintiff to return to work to bring back the

information he requested from his medical providers. Instead, Dr. Alvarez insisted

Plaintiff return to work for full work duties including 24-hour calls and did not wait to

see if Plaintiff was well enough to return to work or if any accommodations were needed.

19.     These incidents pushed Plaintiff over the edge and his health worsened and

he had to be hospitalized.

20.     On September 11, 2017, Plaintiff received a text message from Dr. Alvarez

stating that he will meet with him on September 12, 2017, regarding receiving complaints

by the staff and patients. Plaintiff states this caused him to become overly anxious since

Dr. Alvarez did not meet with him the same day and left him waiting 24 hours to meet.

21.     Even though he was very anxious, Plaintiff stayed in the workplace (pediatric clinic) and worked that day and saw all patients.

22.     On September 12, 2017, Plaintiff and Dr. Alvarez met to discuss Health Technicians making a plan for that day's work and how to address patients who are late for their appointments.

23.     It is the Pediatric Department Policy that if a patient is late more than five minutes it is up to the provider to decide if the patient will be seen or the patient has to reschedule.

24.     Thereafter, Dr. Alvarez proceeded to stand up from his chair, grabbed all of his paperwork and said "I am going to consider this meeting as finished since I know where you are taking me to, and we will meet again at a later time."

25.     Plaintiff's anxiety was extremely high by this time and he told Dr. Alvarez that he was not feeling well and could not see patients in his condition and was going to fill out a leave slip for the day.

26.     Dr. Alvarez responded to Plaintiff, "Why are you sick? What are you sick of and since when?"

27.     Plaintiff responded to Dr. Alvarez stating that in his position as the supervisor at the hospital, he knew very well all of his health issues and conditions. Plaintiff stated he had not been feeling well for the last few days and that he was having an anxiety attack.

28.     Dr. Alvarez told Plaintiff to "make sure you write that diagnosis in the leave slip and leave it in my office."

29.     Although writing a diagnosis in the leave slip is not mandatory nor required, Dr. Alvarez insisted on it.

30.     Plaintiff filled out the leave slip and wrote on an empty space that was provided "Anxiety Attack."

31.     Plaintiff filled out the leave slip as requested, submitted it to Dr. Alvarez's office and then he went home.

32.     Later that same morning, Plaintiff started feeling pressure on the left side of his chest. He was lightheaded and had cold hands.

33.     Plaintiff called his medical provider and was told he could not be seen that day but would see him in his office the next day

34.     On September 9, 2017, Plaintiff received an e-mail and a text message from Dr. Alvarez informing him that he was not accepting his sick leave and that he was being placed on AWOL.

35.     Dr. Alvarez also stated he was not accepting the two weeks extended medical leave requested by his medical provider and that Plaintiff had to return to work for administrative duties.

36.     Plaintiff had been approved previously for scheduled leave the day before (September 18, 2017).

37.     Dr. Alvarez warned Plaintiff that if he did not return to work September 19,

2017, he would consider him AWOL;

38.     On September 21, 2017, Plaintiff met with Dr. Alvarez and Acting Clinical
Director, Dr. Kevin Gaines, to approve the leave as requested by the PMS provider
(Behavioral Health). Dr. Alvarez alleged that he had denied the leave previously because
he thought that Plaintiff was not being treated with any medications.

39.     Dr. Alvarez knew from previous provider visits that Plaintiff was being
treated medically for insomnia, depression, and other medical conditions.

40.     On September 27, 2017, Dr. Alvarez sent an email and text message stating
that Plaintiff was expected to return to work on October 4, 2017 for full pediatric work in
the pediatric clinic.

41.     Dr. Alvarez also added that Plaintiff was expected to cover all night calls
previously assigned to him during that week and the weekend calls that next weekend.
Dr. Alvarez did not wait for the medical summaries he had requested Plaintiff to submit
to him regarding his medical conditions and treatment nor his providers
recommendations.

42.     Dr. Alvarez sent frequent emails and text messages to Plaintiff stating that
he abandoned the patients and that his behavior was unacceptable.

## FIRST CLAIM FOR RELIEF

### (Violation of the ADA and Rehabilitation Act)

43.     Plaintiff realleges every allegation of the complaint.

44.     Plaintiff has a disability.

45.     Plaintiff was a "qualified individual," in that he was able to perform the essential functions of his position, with or without a reasonable accommodation, without endangering himself or others.

46.     The management officials at GIMC were aware of the disability because Plaintiff advised them about it.

47.     His employer took an adverse employment action against him because of his disability.

48.     The conduct described herein worked a constructive discharge of Plaintiff due to the extreme harassment by Dr. Alvarez.

49.     The conduct of Dr. Alvarez unreasonably interfered with complainant's work performance and/or creating an intimidating, hostile, or offensive work environment.

50.     The conduct described herein violated the ADA and the Rehabilitation Act.

51.     Plaintiff was damaged by this conduct, and hereby demands damages, plus costs, attorneys' fees and other relief as the Court deems appropriate.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

A.     Damages in an amount to be determined by the Court;

B.     Court costs and attorneys' fees; and

C.     Such other relief as the Court deems just and proper.

DATED this 23rd day of December, 2020.

*The Law Offices of David R. Jordan, P.C.*

*/s/ David R. Jordan*
David R. Jordan
1995 State Road 602
PO Box 840
Gallup, New Mexico 87305
Attorney for Plaintiff