**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CARLOS DE SANCTIS,

    Plaintiff,

v.             No. CIV 20-1346 RB/JHR

XAVIER BECERRA,[1] in his capacity
as SECRETARY OF HEALTH AND
HUMAN SERVICES,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

  Plaintiff Carlos De Sanctis worked at the Gallup Indian Medical Center (GIMC). He alleges that his supervisor harassed and discriminated against him based on his disabilities, resulting in his constructive discharge. Defendant Xavier Becerra, Secretary of Health and Human Services, moves for summary judgment and argues that De Sanctis failed to timely exhaust his administrative remedies under the Rehabilitation Act. De Sanctis acknowledges that he failed to raise his claims before an Equal Employment Opportunity (EEO) Counselor within 45 days of the last alleged discriminatory act but contends that he is entitled to equitable tolling. For the reasons discussed in this Opinion, the Court finds that De Sanctis is not entitled to tolling and grants Defendant's motion.

**I.  Legal Standards and Evidentiary Rulings**

  **A.  Summary Judgment Standard**

  "Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] Xavier Becerra became the United States Secretary of Health and Human Services on March 19, 2021. The Court substitutes Becerra for Alex Azar as Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

judgment as a matter of law." *Halley v. Huckaby*, 902 F.3d 1136, 1143 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1347 (2019) (citing *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id.* "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Tanner v. San Juan Cnty. Sheriff's Off.*, 864 F. Supp. 2d 1090, 1106 (D.N.M. 2012) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256). A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Id.* at 1107 (quotation and citation omitted). Instead, the non-moving party must come forward with "sufficient evidence on which the factfinder could reasonably find" in their favor. *Id.* (citations omitted). Evidence that is "merely colorable," *Anderson*, 477 U.S. at 249, or consists only of "[u]nsubstantiated allegations[,]" *McCoy*, 887 F.3d at 1044, is insufficient.

**B.      Relevant Local Rules**

Pursuant to Local Rule 56, the party moving for summary judgment "must set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists." D.N.M. LR-Civ. 56(b). The movant must number the facts "and must refer with particularity to those portions of the record upon which the movant relies." *Id.* In return, the non-moving party must also provide "a concise statement of the material facts . . . as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with

particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." *Id.* "**All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.**" *Id.* (emphasis added).

Defendant provides a statement of Undisputed Material Facts. (*See* Doc. 6 at 2–5.) De Sanctis provides his own statement of facts in response, but he wholly fails to comment on or submit evidence to controvert Defendant's factual assertions. (Doc. 12 at 2–9.) As a result, he fails to create a genuine dispute of fact, and the Court deems Defendant's facts undisputed.

### C.    Evidentiary Objections and Rulings

De Sanctis offers an affidavit from his wife, Milagros De Sanctis ("Milagros") (Doc. 12-1), and two affidavits from a family friend, Sherri Zudell (Docs. 12-2; 12-4.[2]) He also submits six letters: one authored by Milagros (Doc. 12-3), three from Clarissa C. Juarez, CNP (Docs. 12-5–7), and two written by Vanessa E. Ortiz, LPCC (Docs. 12-D-8–9.) De Sanctis has not offered any of these witnesses as an expert.

Defendant objects to the exhibits on two main grounds. First, Defendant notes that Exhibits 3 and 5–9 "are unsworn, unauthenticated letters . . . that were not signed under penalty of perjury pursuant to 28 U.S.C. § 1746." (Doc. 14 at 14–15.) "At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial, but the content or substance of the evidence must be admissible." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 999 (10th Cir. 2019) (quotation marks and citations omitted). Here, De Sanctis offers unsworn letters "to prove the truth of the matters asserted therein." (*See* Doc. 14 at 15 (citing Doc. 12 at 2–9).) As De Sanctis

---

[2] It appears that De Sanctis intended to attach Zudell's letter as Exhibit 4 but inadvertently attached his entire response to Defendant's motion to dismiss before the EEOC. (*See* Doc. 12-4.) When the Court discusses Exhibit 4, it refers specifically to page 16 of Doc. 12-4, Zudell's letter dated August 19, 2019.

has not offered any reason to find that the letters are admissible under Federal Rule of Evidence 801, they may be excluded as inadmissible hearsay. *See, e.g.*, *McCleary v. Nat'l Cold Storage, Inc.*, 67 F. Supp. 2d 1288, 1297 n.3 (D. Kan. 1999). The more pressing issue, however, relates to the opinions expressed within the letters.

Defendant argues that the pertinent opinions offered in every exhibit—opinions regarding De Sanctis's diagnoses and the effects his diagnoses had on his behavior and on his ability to contact an EEO counselor in the applicable timeframe—constitute inadmissible expert opinions. (*See* Doc. 14 at 13–15.) For example, Milagros testified that she "handle[s] all of [De Sanctis's] personal affairs *due to* his disability." (Doc. 12-1 (emphasis added).) She listed his diagnoses (severe post-traumatic stress disorder, anxiety, and chronic depression) and asserted that his mental health issues cause several consequences, from bizarre behavior to an inability to deal with work-related tasks. (*Id.*; *see also* Doc. 12-3 at 1.) Zudell testified similarly. (Docs. 12-2; 12-4.)

CNP Juarez stated that De Sanctis "was in an acute state of frequent, debilitating[] panic attacks[] and severe depression, and not in a mental state that should hold him to a deadline for filing an EEO complaint . . . ." (Doc. 12-5.) She listed his diagnoses and stated that De Sanctis "decompensated to the point of becoming incompetent" due to his supervisor's behavior. (Doc. 12-6 at 1.) She stated that his mental health "symptoms directly [a]ffected his ability to make decisions" and that his "stress and/or anxiety" resulted in an inability to function such that he "relied on his spouse for basics including Activities of Daily Living." (*Id.*) CNP Juarez averred that "his Cognitive State was compromised as evidenced by decreased focus and concentration, difficulty with decision making, and forgetfulness especially when anxious or stressed." (*Id.*) Finally, she stated that "during the 12-month time-limit for Mr. De Sanctis to request a change of

4

status, he was not competent to make those decisions." (Doc. 12-7.)[3]

LPCC Ortiz stated that De Sanctis's anxiety was exacerbated and resulted in hospitalization after his "superiors did not respect" the recommendations of his doctor to take time off work. (Doc. 12-8.) She listed his diagnoses and stated that De Sanctis experienced "symptoms of Severe PTSD as a result of the treatment he received . . . ." (*Id.*) She further "advocate[d] for the time frame to be waived on the grounds that [De Sanctis] qualifie[d] as being in a state of mental incompetence at the time of separating from his job." (Doc. 12-9.) She opined that he was unable to leave his home for over a year "to complete simple daily tasks." (*Id.*)

The above statements were all made by lay witnesses.[4] Lay evidence regarding diagnoses and "the degree to which [they] affect[]" an individual's "major life activities . . . is inadmissible in court and thus cannot be used to oppose summary judgment." *Felkins v. City of Lakewood*, 774 F.3d 647, 651 (10th Cir. 2014) (citing Fed. R. Civ. P. 56(c)(4)). As De Sanctis's witnesses have not been qualified as experts, their "opinion testimony on a medical issue cannot be 'based on scientific, technical, or other specialized knowledge.'" *Id.* (quoting Fed. R. Evid. 701). While "a lay witness may testify to someone's 'unusual, abnormal or bizarre conduct' and opine on his sanity," *id.* at 652 (citing *United States v. Goodman*, 633 F.3d 963, 968–69 (10th Cir. 2011)), she may not testify about the person's "manic depressive state." *Id.* (citing *United States v. Walshe*, 526 F. App'x 834, 839 (10th Cir. 2013)). Further, while a lay witness may testify "that an individual is 'distressed' in some fashion," she may not testify "that an individual suffers from a

---

[3] It is not clear what "12-month time-limit" CNP Juarez referred to here. (*See* Doc. 12-7.) As this letter is addressed to the OPM, she presumably referenced some time limit relevant to De Sanctis's federal retirement benefits.

[4] Even De Sanctis's health providers are lay witnesses, as he did not identify them as experts. *Cf., e.g.*, *Montoya v. Sheldon*, 286 F.R.D. 602, 613 (D.N.M. 2012) ("Under the amended rule 701, 'a treating physician who has not been identified as an expert witness pursuant to Rule 26(a)(2) may not provide testimony beyond the scope of her treatment of plaintiff and [the physician's] conclusions must fall within the province of a lay witness.'") (quoting *Parker v. Cent. Kan. Med. Ctr.*, 57 F. App'x. 401, 404 (10th Cir. 2003)).

particular medical condition such as alcoholism or depression which only professional medical care providers may be qualified to diagnose." *Montoya*, 286 F.R.D. at 614 (quotation omitted); *see also id.* at 614–15 (noting that diagnoses of depression or anxiety disorder require expert testimony). Here, while the Court accepts statements from De Sanctis's wife, friend, and providers that he was under stress and acted out of character, their statements regarding his diagnoses are inadmissible. *See id.*

The Tenth Circuit has also held that a lay witness is not competent to testify that her physical or mental symptoms are caused by a specific health condition "or to opine on the physical or mental effects of [a mental health condition] generally, 'for those are clearly matters beyond the realm of common experience and require the skill and knowledge of an expert witness.'" *Neri v. Bd. of Educ. for Albuquerque Pub. Schs.*, 860 F. App'x 556, 562 (10th Cir. 2021) (citations omitted) (discussing PTSD). Similarly, the Tenth Circuit has found that a plaintiff in a Rehabilitation Act case cannot, "without expert testimony, . . . prove that her depression, anxiety, and PTSD substantially limited at least one major life activity . . . ." *Clancy v. Miller*, 837 F. App'x 630, 635–36 (10th Cir. 2020), *cert. denied sub nom.*, *Clancy v. Austin*, 141 S. Ct. 2504, *reh'g denied*, 141 S. Ct. 2718 (2021). The same is true here. De Sanctis's lay witnesses may not testify about how his symptoms or diagnoses limited his life activities, nor may they opine as to whether he was "mentally incompetent" to handle his affairs.

## II.    Factual and Procedural Background

### A.    De Sanctis's Employment and Resignation

De Sanctis worked as a Medical Officer in Pediatrics at the GIMC. (Doc. 1 (Compl.) ¶ 7.) He alleges that his supervisor, Dr. Gilberto Alvarez, discriminated against him "on the bases of disability (mental) and subjected [him] to harassment (non-sexual) and a hostile work

environment[,]" resulting in De Sanctis's constructive discharge. (*Id.* ¶¶ 6, 8, 10, 48; *see also* Doc. 6-A at 1.) The facts leading up to De Sanctis's separation from GIMC are as follows.

De Sanctis took medical leave at some point in September 2017. (*See* Compl. ¶¶ 25–37.[5]) De Sanctis submitted a "letter from his Behavioral Health Provider recommending" that De Sanctis take medical leave "for at least two additional weeks due to his illness[,]" and Alvarez "conditionally approved" the sick leave. (Doc. 6-A at 1; *see also* Compl. ¶¶ 15, 40.) Alvarez emailed De Sanctis on September 22, 2017, and sought additional medical documentation in support of the sick leave request. (*See* Doc. 6-B at 2.) On September 27, 2017, Alvarez emailed De Sanctis and informed him that he expected De Sanctis to return "to work on October 4, 2017[,] if [he] was well . . . ." (Doc. 6-A at 3.) De Sanctis testified that Alvarez's email caused him to have a panic attack and suicidal ideations. (Doc. 6-A at 2, 4.) De Sanctis went to the emergency room on September 27, 2017, and was transferred to a psychiatric ward the next day, where he stayed for five days. (*Id.*)

On October 3, 2017, De Sanctis's wife, Milagros, took the requested medical documentation to GIMC. (*Id.* at 3.) This documentation included "discharge instructions" from the psychiatric ward, recommending four additional weeks of leave followed by two weeks of light duty. (Doc. 6-B at 3–4.) Alvarez granted the requested leave. (*Id.* at 4.) Two weeks later, Milagros hand delivered De Sanctis's two-week notice and letter of resignation to the department secretary, signed by De Sanctis and dated October 17, 2017. (Docs. 6 ¶ 10; 6-C at 2; D-1.) "At some point prior to the effective date of his resignation, [he] changed his resignation to a retirement based on his attaining the minimum retirement age with ten years of Federal service." (Doc. 6-E at 2.)

Milagros testified that in September 2017 and for some time after, De Sanctis was suffering

---

[5] The Court does not consider paragraphs 25–27 of the Complaint to be undisputed but includes this information for context.

from mental health issues that led to bizarre behaviors. (*See, e.g.*, Docs. 12-1; 12-3.) For example, at some point he "jumped from a running car . . . ." (Doc. 12-1.) She stated that she "handle[s] all of his personal affairs . . . ." (*Id.*)

### B.     EEO Proceedings

On March 14, 2018, De Sanctis initiated contact with an EEO counselor, 148 days after he resigned. (Doc. 6-D-2.) "The EEO Counselor report indicated that [De Sanctis] was represented by attorney David Jordan, the same attorney representing him in this matter." (Doc. 6 ¶ 13 (citing Doc. 6-D-2; Compl. at 8).) On June 21, 2018, David Jordan's office emailed the Senior EEO Specialist and attached a letter dated April 27, 2018, from De Sanctis, who explained that he "was unable to contact [an] EEO Counselor prior to February 22[, 2018,] due to [his] illness." (*See id.* ¶ 14 (quoting Doc. 6-D-3 at 2); *see also* Doc. 6-D-3 at 1.)

Defendant filed a motion to dismiss the EEO complaint on March 26, 2020, on the basis that De Sanctis missed the 45-day deadline to contact an EEO counselor. (*See* Doc. 6-D-4 at 1–2.) De Sanctis responded to the motion and asserted that his tardiness was "a direct result of the horrible behavior of the Agency[,]" which caused him to "suffer[] a complete mental breakdown . . . [that] rendered him completely mentally incompetent and completely incapable of complying with the deadlines for the contacting of the counselor." (Doc. 6-D-5 at 1.) He argued that as a result, equitable tolling should apply. (*Id.*)

On May 4, 2020, the EEOC Administrative Judge (AJ) entered an Order for Complainant to Provide Additional Evidence. (Doc. 6-D-6 at 1.) 29 C.F.R. § 1614.105(a)(1) requires an individual to "raise a complaint of discrimination with an EEO counselor within 45 days of the matter alleged to be discriminatory . . . ." (*Id.*) The AJ noted that "[t]he last alleged act of discrimination in this case was October 17, 2017, which is when [De Sanctis] resigned from his

position as an employee of the Agency." (*Id.* at 2.) De Sanctis "did not contact an EEO counselor for 148 days after the alleged discrimination, well beyond the permitted 45 days." (*Id.*) The EEOC allows tolling where an individual "is so incapacitated by his [physical or mental health] condition that he is unable to meet the regulatory time limits. (*Id.* (quotation omitted).) Because De Sanctis argued for tolling based on his mental health issues, the AJ ordered him to provide additional evidence to show "he was so incapacitated by his condition" from October 2017 through March 2018 "that he was unable to meet the regulatory time limits." (*Id.*) De Sanctis did not respond to the order. (*See* Doc. 6-D-7 at 2.) The AJ found that De Sanctis "failed to present evidence sufficient to demonstrate he was so incapacitated by his condition that he was unable to meet the regulatory time limits." (*Id.* at 3.) Consequently, the AJ granted the Agency's motion and dismissed De Sanctis's complaint with prejudice without ruling on the merits of the complaint. (*See id.*)

De Sanctis filed his Complaint in this Court on December 23, 2020, alleging claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act. (Doc. 1.) Defendant moved for summary judgment on July 23, 2021. (Doc. 6.)

## III.   Analysis

Defendant begins by noting that De Sanctis may not maintain a claim under the ADA, as he is a federal employee. (Doc. 6 at 1 n.2.) The Court agrees. "The ADA expressly exempts the federal government from liability in 42 U.S.C. § 12111(5)(b)(i)." *Parker v. Berryhill*, No. 17-1063-DDC, 2017 WL 4697511, at *3 (D. Kan. Oct. 19, 2017); *see also Padilla v. Mnuchin*, 836 F. App'x 674, 676 n.1 (10th Cir. 2020). The Rehabilitation Act, though, "includes a provision waiving the United States' sovereign immunity for disability discrimination claims." *Parker*, 2017 WL 4697511, at *3 (citing 29 U.S.C. § 791; *Johnson v. U.S. Postal Serv.*, 861 F.2d 1475, 1477 (10th Cir. 1988)). Because De Sanctis cannot state a claim against Defendant under the ADA, the Court

will dismiss this claim.

"[T]he Rehabilitation Act require[s] a federal employee to exhaust his administrative remedies before filing suit." *Rodriguez v. Ashcroft*, No. CV 02-1374 RB/RLP, 2004 WL 7338123, at *3 (D.N.M. Mar. 31, 2004) (citing *Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir. 1997)) (previous citation omitted). Relevant here, the process to exhaust includes a requirement that the employee "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." *Id.* (quoting 29 C.F.R. § 1614.105(a)(1)). AJ Smiles found that "[t]he last alleged act of discrimination in this case was October 17, 2017," the day De Sanctis resigned his position with GIMC. (Doc. 6-D-6 at 2.) De Sanctis contacted an EEO Counselor on March 14, 2018, 148 days after that date. (*See id.*; *see also* Doc. 6-D-2.) De Sanctis acknowledges that he did not comply with the applicable time limit but contends that the limit should be equitably tolled due to his mental state. (*See* Doc. 12 at 1.)

"Failure to timely file an administrative charge is not a jurisdictional bar, but is subject to waiver, estoppel, and equitable tolling." *Rodriguez*, 2004 WL 7338123, at *4 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002)). Courts narrowly construe such equitable exceptions. *See id.*; *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996). "While [the Tenth Circuit has] held that the limitations period may be tolled where a claimant has been 'actively misled,' [it] has never held that mental incapacity tolls the statute of limitations." *Biester*, 77 F.3d at 1268 (quoting *Richardson v. Frank*, 975 F.2d 1433, 1435–37 (10th Cir. 1991)). Still, the Tenth Circuit has opined that equitable tolling may be warranted where the plaintiff establishes "a severe or profound mental impairment, such as that resulting in institutionalization or adjudged mental incompetence." *Del Rantz v. Hartley*, 577 F. App'x 805, 810 (10th Cir. 2014) (citations omitted).

"The plaintiff has the burden of establishing his mental incompetency." *Rodgriguez*, 2004 WL 7338123, at *4 (citing *Harms v. I.R.S.*, 321 F.3d 1001, 1006 (10th Cir. 2003)).

De Sanctis has not established exceptional circumstances that would warrant equitable tolling. He presents no evidence to show that he was either institutionalized during the relevant time period (October 17, 2017 through March 14, 2018) or that he was adjudged mentally incompetent. Although he attempts to present testimony to show that he was mentally incompetent and unable to handle his affairs, his witnesses are not qualified to render such opinions. *See, e.g.*, *Felkins*, 774 F.3d at 651; *Neri*, 860 F. App'x at 562; *Clancy*, 837 F. App'x at 635–36.

In *Blackwell v. Runyon*, the plaintiff in a Rehabilitation Act case failed to contact an EEO counselor within 45 days of an alleged discriminatory act. 116 F.3d 1489, at *1 (10th Cir. 1997). The Tenth Circuit found that equitable tolling was not warranted, as the plaintiff had taken actions to "deal[] with his discharge" and was able to "procur[e] an attorney to represent him in" an unrelated matter. *See id.* at *2. Defendant notes that during the relevant time in this case, De Sanctis "managed to change his resignation to retirement and retain an attorney to represent him in the EEO proceedings." (Doc. 6 at 9.) De Sanctis asserts that his wife managed his affairs after he resigned from GIMC, but this assertion is insufficient to raise a question of material fact to show that he was mentally incompetent. *Cf., e.g.*, *Thompson v. Comm'r of Social Security Admin.*, 919 F.3d 1033, 1038 (8th Cir. 2019), *cert. denied sub nom. Thompson v. Saul*, 140 S. Ct. 856 (2020) (finding that plaintiff's "ability to manage his affairs . . . with the help of his wife[] precludes an inference that [his] mental condition prevented him from sending an appeal to the district court"). Moreover, there is no evidence that De Sanctis was labeled incompetent or unfit to work following his hospitalization in October 2017; rather, the discharge instructions limited him from working for four weeks followed by two weeks of light duty. (*See* Doc. 6-B at 3–4.) Finally, De Sanctis

stated in his April 2018 letter to the EEO Specialist that his mental health issues prevented him from contacting an EEO counselor prior to February 22, 2018. (*See* Doc. 6-D-3 at 1.) De Sanctis does not explain why he waited until March 14, 2018, to contact the EEO Counselor, nor why the time should be tolled after February 22, 2018. The Court finds that De Sanctis has not submitted evidence to create a genuine dispute of fact regarding whether he was incompetent or otherwise incapable of timely complying with the relevant exhaustion requirements.

De Sanctis emphasizes that his mental health breakdown was a direct result of the alleged discrimination and harassment and argues that this allegation supports his request for equitable tolling. (*See* Doc. 12 at 1, 13.) The decision in *Biester* provides guidance. There, the plaintiff sought equitable tolling and argued that the defendant's sexual harassment "caused his mental illness" and "prevented [him] from asserting his rights . . . ." 77 F.3d at 1269 n.2. He presented evidence to show that his supervisor sexually harassed him for three months, and he was thereafter hospitalized on three occasions due to major depression with symptoms "of time disorientation, fatigue, memory loss, and impaired judgment . . . ." *Id.* at 1266. The Tenth Circuit found that the facts did "not constitute the 'extraordinary' circumstances necessary to justify equitable tolling under established Tenth Circuit precedent." *Id.* at 1269 n.2. The same is true here. Although De Sanctis alleges that Alvarez's conduct caused him to have a mental breakdown leading to hospitalization, he fails to show that Defendant, through Alvarez's conduct or otherwise, actively misled or prevented him from contacting an EEO counselor within the time limits. *See Harms*, 321 F.3d at 1007.

In short, De Sanctis fails to meet his burden to show that he is entitled to equitable tolling due to his mental incapacity during the relevant time. Consequently, the Court declines to equitably toll the time limitation for exhaustion and grants Defendant's motion.

12

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 6) is **GRANTED**;

**IT IS FURTHER ORDERED** that this lawsuit is **DISMISSED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE